Case No. 25-20096

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

**In the Matter of Galleria 2425 Owner, L.L.C.**

*Debtor*

**ALI CHOUDHRI**
*Appellant*,
v.

**NATIONAL BANK OF KUWAIT, S.A.K.P. NEW YORK BRANCH,**
*Appellee.*

On Appeal from the United States District Court for the
Southern District of Texas, Houston Division
Case No. 4:24-cv-03198
Honorable Keith P. Ellison

_____

## BRIEF OF APPELLANT
## ALI CHOUDHRI

_____

Jeffrey W. Steidley
THE STEIDLEY LAW FIRM
Texas State Bar No. 19126300
Federal Bar No. 5609
jeff@texlaw.us
3701 Kirby Drive, Suite 1196
Houston, Texas 77098
(713) 523-9595
(713) 523-9578 —Fax

**ATTORNEYS FOR APPELLANT
ALI CHOUDHRI**

## **CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellants: | Counsel for Appellants: |
|---|---|
| Ali Choudhri | Jeffrey Steidley of Steidley Law Firm Houston, TX |

| Appellees: | Counsel for Appellees: |
|---|---|
| National Bank of Kuwait, S.A.K.P., New York Branch | Charles Conrad of Pillsbury Winthrop Shaw Pittman, L.L.P. Houston, TX |
| National Bank of Kuwait, S.A.K.P., New York Branch | Andrew Troop of Pillsbury Winthrop Shaw Pittman, L.L.P. New York, NY |

*/s/Jeffrey W. Steidley*
Jeffrey W. Steidley
Fed ID 5609
THE STEIDLEY LAW FIRM
3701 KIRBY, SUITE 1196
Houston, Texas 77098
Tel. 713.523.9595
jeff@texlaw.us

**ATTORNEY FOR APPELLANT ALI CHOUDHRI**

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

This case meets the standards in Rule 34(a)(2) for oral argument, in that (a) this appeal is not frivolous, (b) the dispositive issues raised in this appeal have not been recently and authoritatively decided adverse to Appellant's position, and (c) as described in the accompanying memorandum, including the confusion that appears in the lower court perhaps due to the not uncomplicated factual scenario, the decisional process would be significantly aided by oral argument.

# **TABLE OF CONTENTS**

**TABLE OF CONTENTS**                                                                    **PAGE**

CERTIFICAE OF INTERESTED PERSONS…………………………………………ii

STATEMENT OF ORAL ARGUMENT……………………………………..........iii

TABLE OF CONTENTS………………………………………………………...iv

TABLE OF AUTHORITIES……………………………………………….......v

JURISDICTIONAL STATEMENT……………………………………………1

STATEMENT OF THE ISSUES………………………………...………..........6

STATEMENT OF THE CASE…....………………….. ..………………............7

SUMMARY OF THE ARGUMENT…………………………………………....16

ARGUMENT…………………………………..………….....………………...17

    I.       Whether the Bankruptcy Court had "Core" Jurisdiction………………...17
    II.     Whether the Forum Selection Clause Mandates Remand……………….23
    III.    Whether the Rule 12(b)(6) Motion was Appropriately Granted…………25
    IV.    Whether the Bankruptcy Court Improperly Denied Motion
          for Leave to Amend?......................................................................40

CONCLUSION…………………………………………………………….....41

PRAYER…………...……………………………………………………....42

CERTIFICATE OF SERVICE …………………………………………….44

CERTIFICATE OF COMPLIANCE…………………………………………...45

# TABLE OF AUTHORITIES

**TABLE OF AUTHORITIES-Cases**                 **PAGE**

*50-Off Stores, Inc. v. Banques Paribas (Suisse), S.A.*,
180 F.3d 247 (5th Cir. 1999)……………………………………………………23

*Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)…………………18

*Allen v. Hays,* 65 F.4th 736 (5th Cir. 2023)……………………………………….26

*Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003)……………39

*Arco Envtl. Remediation, LLC v. Dep't of Health & Envtl. Quality of Montana*,
213 F.3d 1108, 1117 (9th Cir. 2000)……………………………………………….19

*Arthur W. Tifford, PA v. Tandem Energy Corp.*,
562 F.3d 699, 705 (5th Cir.2009)…………………………………………………33

*Ass'n of Am. Physicians & Surgeons Educ. Found. v.*
*Am. Bd. of Internal Med.*, 103 F.4th 383 (5th Cir. 2024)…………………………..41

*Atlantic Marine Construction Company v.*
*United States District Court for the Western District of Texas,*
571 U.S. 49, 63 (2013)………………………………………………………..5,19

*Atrium Med. Ctr., LP v. Houston Red* C LLC,
595 S.W.3d 188, 192 (Tex. 2020)………………………………………...11,26,34

*Basic Cap. Mgmt. v. Dynex Cap., Inc.*, 976 F.3d 585, 588 (5th Cir. 2020)…….28,30

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 563, n.8 (2007)……………………14,31

*Bremen*, 407 U.S. at 12, 92 S. Ct. 1907………………………………………24,25

*De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995)……………………18

*Digit. Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*,
965 F.3d 365, 382-83 (5th Cir. 2020)…………………………………………….39

v

*Domingo v. Mitchell*,
257 S.W.3d 34, 40 (Tex. App.—Amarillo 2008, pet. denied)……………………39

*Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006)……..40

*FPL Energy, LLC v. TXU Portfolio Mgmt. Co., L.P.*,
426 S.W.3d 59, 69 (Tex. 2014)……………………………………………29,32,34

*Garrett v. Commonwealth Mortg. Corp.*, 938 F.2d 591, 594 (5th Cir. 1991)……26,30

*Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007)……………38

*Horlock v. Horlock*, 614 S.W.2d 478, 484
(Tex. App.—Houston [14th Dist.] 1981……………………………………...18

*Houston Pro. Towing Ass'n v. City of Houston*,
812 F.3d 443, 447 (5th Cir. 2016) (quotation omitted)……………………………27

*In re Craig's Stores of Texas, Inc.*,
266 F.3d 388, 390 (5th Cir.2001) (citations omitted)………………………...4,10,21

*In re Deepwater Horizon,* 739 F.3d 790, 798 (5th Cir. 2014)……………………..16

*In re Galaz*, 841 F.3d 316, 321 (5th Cir. 2016)……………………………………16

*In re Repository Tech., Inc.*, 601 F.3d 710, 719 (7th Cir. 2010)……………………20

*In re Transamerican*, 127 B.R. 800, 803 (S.D. Tex. 1991)………………………21

*In re U.S. Brass Corp.*, 301 F.3d 296, 303 (5th Cir. 2002)…………………………20

*In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987)……………………………………19,20

*Lastih v. Elk Corp.*, 140 F.Supp.2d 166 (D.Conn.2001)…………………………..20

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
594 F.3d 383, 387 (5th Cir. 2010)…………………………………………………26

*Martin v. Cadle Co.*, 133 S.W.3d 897, 903 (Tex.App,--Dallas, pet. denied)……….38

*Marx v. FDP, LP*,
474 S.W.3d 368, 376 (Tex. App.—San Antonio 2015, pet. denied)………………38

*Mayeaux v. La. Health Serv. & Indem. Co.,* 376 F.3d 420, 425 (5th Cir. 2004)…..40

*Mayfield v. Currie,* 976 F.3d 482, 485 (5th Cir. 2020)……………………………..25

*McNerny v. Nebraska Public Power Dist.,*
309 F.Supp.2d 1109 (D. Neb. 2004)……………………………………………………19

*MTIS Ltd. v. Corporation*,
64 S.W.3d 62, 68 (Tex. App.—Houston [14th Dist.] 2001, no pet.)………………39

*Ney v. 3I Grp.,* 21-50431, p. 8 (5th Cir. 2023)…………………………………………5

*Nivens v. City of League City*,
245 S.w.3d 470, 474, n.2 (Tex.App.—Houston [1st Dist.] 2007…………………38

*Noble House, L.L.C. v. Certain Underwriters*,
67 F.4th 243, 248 (5th Cir. 2023)…………………………………………………24

*Northern Ill. Gas Co. v. Airco Indus. Gases*, 676 F.2d 270, 273 (7th Cir.1982)…...19

*O'Halloran v. Univ. of Wash.*, 856 F.2d 1375, 1380 (9th Cir. 1988)………………19

*Parker Drilling Co.,* 316 S.W.3d at 72…………………………………………………34

*Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991)……………………………34

*Prince Wateba*, 02-23-00085-CV (Tex.App. Oct. 05, 2023.)……………………38

*R.J. Suarez Enters. Inc. v. PNYX L.P.*,
380 S.W.3d 238, 242 (Tex. App.—Dallas 2012, no pet.)………………………13,18

*Royal Canin U.S.A. v. Wullschleger*, 604 U.S. ___ (2025)………………………3,17

*Sage St. Assocs. v. Northdale Constr. Co.,* 863 S.W.2d 438, 445 (Tex. 1993)…….38

*Shops at Legacy (RPAI) L.P. v. Del Frisco's Grille of Tex., LLC*,
No. 05-19-01274-CV, 2020 WL 4745548, at *5
(Tex. App.-Dallas Aug. 17, 2020, pet. denied)……………………………………34

*StarCom Commc'ns, LLC v. Phonetec, LP,* No.
11-07-00305-CV, 2009 WL 1653059, at *1
(Tex. App.-Eastland June 11, 2009, no pet.) (mem. op.)…………………….…37

*Steel Co. v. Citizens for a Better Env't* ,
523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)…………………………25

*Stem v. Gomez,* 813 F.3d 205, 215 (5th Cir. 2016)…………………………………40

*Stern v. Marshall*, 564 U. S. 462, 499 (2011)………………………………………3,23

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22, 33, 108 S. Ct. 2239, 101 L.Ed.2d 22 (1988)…………………………24

*Stripling v. Jordan Prod. Co*, 234 F.3d 863, 872 (5th Cir. 2000)…………………40

*Taylor v. Charter Med. Corp.*, 162 F.3d 827, 831 (5th Cir. 1998)…………………27

*Trafalgar House Oil & Gas Inc. v. De Hinojosa* ,
773 S.W.2d 797 , 798 (Tex. App.—San Antonio 1989, no writ)………………11,29

*Trowbridge v. Chesapeake Energy Corp.
(In re Chesapeake Energy Corp.),* 70 F.4th 273, 285 (5th Cir. 2023)……………..21

*United Mobile Networks, L.P. v. Deaton,*
939 S.W.2d 146, 147-48 (Tex. 1997) (per curiam)………………………………..18

*Washer v. Bullitt County*, 110 U. S. 558, 562,
4 S. Ct. 249, 28 L. Ed. 249 (1884)………………………………………………17

*Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016)………………24

*Willy v. Coastal Co*rp., 855 F.2d 1160, 1164 (5th Cir. 1988)………………………17

*Wormley v. Southern Pacific Transp. Co.,* 863 F.Supp. 382 (E.D. Tex. 1994)……19

**<u>STATUTES</u>** **<u>PAGE</u>**

2 JAMES WM. MOORE ET AL.,
MOORE'S FEDERAL PRACTICE § 12.34[2], at 12-94 (3d ed. 2022)…………26

14C Wright, Miller & Cooper,
Federal Practice and Procedure: Jurisdiction 3d § 3733 at p. 357-61 (1998)……..20

28 U.S.C. § 157(a)-(b)………………………………………………………..20

28 U.S.C. § 157(b)……………………………..………………………..19

28 U.S.C. § 157(b)(2)………………………………………………...19

28 U.S.C. § 157(c)(1)…………………………………………………4,19

28 U.S.C. § 158(a)………………………………………………………..6

28 U.S.C. §§ 158(d), 1291…………………………………………..7

28 U.S.C. § 1334(a)-(b)………………………………………………21

FED. R. BANKR. P. 8001(a)………………………………………………6

FED. R. CIV. P. 15(a)…………………………………………………..40

FED. R. CIV. P. 15(a)(2)………………………………………………..40

# JURISDICTIONAL STATEMENT

Appellant initiated this breach of contract action in state court, in accordance with the agreement of the parties that the exclusive jurisdiction of the dispute was in Harris County state district court.[1] As required in a suit for money damages, Appellant plead: "Pursuant to Texas Rules of Civil Procedure 47(c), Appellant is presently seeking monetary relief over $1,000,000.00."[2] Appellant amended his Complaint in federal court prior to the motions at issue here, and in his Third Amended Complaint, limited his request for relief to money damages.[3]

The principal parties to the contract, titled the Confidential Settlement Agreement (CSA), were the National Bank of Kuwait (NBK) and the Debtor, Galleria 2425 Owner, LLC[4] (Galleria 2425) and the contract principally involved the settlement terms agreed to by NBK and Galleria 2425, that required Galleria

---

[1] The Settlement Agreement states in part: "The undersigned agree that exclusive jurisdiction for any dispute based on or arising from this Agreement will be in the Harris County District Court, Houston, Texas; and that the prevailing party in any suit based on or arising from this Agreement will be further entitled to recover from the non-prevailing party the prevailing party's reasonable and necessary attorneys' fees, costs, and expenses." Settlement Agreement, 9.4 page 11 of 16, (ROA 1602-1616, at 1613)

[2] Main Case ECF 270, page 7. Whether NBK ultimately is adjudged to owe Appellant nothing, or millions of dollars, that result only affects NBK and the Appellant it has no effect at all on any other party. (ROA 1540-1544)

[3] (ROA 97) "Plaintiff requests money damages in the amount of the value of the Tax Liens, as well as reasonable attorneys' fees, prejudgment and postjudgment interest and costs, to the extent allowed by law."

[4] The CSA was entered into prior to the bankruptcy filing, with an effective date of August 22, 2022. (ROA 1602)

2425 to make certain payments to NBK.[5]  Appellant assigned NBK the tax liens at issue, and obtained an option to acquire certain rights under the contract, but this option was never exercised.  Appellant had no obligations under the contract once the liens were temporarily assigned, and outside of the return of the tax liens, with the option never exercised, NBK had no obligations to Appellant under the contract.[6]

The action was served on Defendant NBK on May 3, 2024, through the ECF service system, as an exhibit in the main bankruptcy case.[7]  In contravention of the contractual agreement of the parties regarding exclusive state court jurisdiction, the Notice of Removal was filed asserting as the sole ground of federal jurisdiction the alleged "core" jurisdiction in the bankruptcy court.[8]

Before NBK entered its appearance, Appellant filed his Third Amended Complaint, conforming his pleadings to federal pleading rules, which are more specific than the notice pleadings required in Texas state court.  The Third Amended Complaint is the operative pleading on this appeal, and a unanimous Supreme Court has recently confirmed that any jurisdictional analysis applies to the amended

---

[5] CSA is ROA 1602-1616.

[6] This multiple party feature to the contract becomes important, as the bankruptcy court appears to have confused the dispute that arose between Galleria 2425 and NBK, with the tax lien issue, which only involves NBK and Appellant.  The Debtor Galleria 2425 never had an interest in Appellant's claim for damages at any time.

[7] Main Case ECF 270, exhibit 1. Apparently the Debtor's counsel was advising the bankruptcy court and NBK of the existence of the state court action, but the Debtor has never been involved in this case in any court, state or federal.

[8] This Notice was filed in the same case in which the Defendant was served with the original state court petition through the ECF system. (ROA 6-42)

pleading, and not on a previous one.[9] Without question, the Third Amended Complaint also makes clear that the underlying action is one for money damages only,[10] between two parties neither of which is the Debtor, and therefore no bankruptcy court jurisdiction exists.[11]

Appellant filed a Motion to Remand, asserting the applicability of the forum selection clause, and the absence of the sole jurisdictional ground made in the removal.   Appellant also raised a question concerning the untimeliness of the removal since it was filed more than thirty days after NBK was served with the state court petition by the ECF system.   (ROA 43-51).[12] NBK filed a Rule 12(b)(6) motion, asserting a right to relief in part based on affirmative defenses that do not appear on the face of the operative complaint. (ROA 124-134) Appellant responded to the motion, and requested leave to amend his complaint. (ROA162-736)

The bankruptcy court denied the Motion to Remand, asserting "core"

---

[9] *Royal Canin U.S.A. v. Wullschleger*, 604 U.S. 22, 46 (2025).

[10] The superseded state court pleading in compliance with Texas law stated specifically that it sought money damages in excess of $1,000,000, and included no request for injunctive or declaratory relief.

[11] *See, e.g., Stern v. Marshall*, 564 U. S. 462, 499 (2011)(no bankruptcy jurisdiction when the claim "is in no way derived from or dependent upon bankruptcy law").   As in *Stern*, the instant state court action "exists without regard to any bankruptcy proceeding." *Id.*

[12] It is undisputed that NBK was "served" through the ECF system with the state court action, and that its notice of removal was more than thirty days after that.   This appears to be an issue that is sui generis, and given the merit of the other points on appeal, it is not presented to this Court for determination.

bankruptcy jurisdiction over the damages suit between two non-Debtor parties,[13] even though the underlying bankruptcy was the subject of a confirmed plan, and the date that damages sought in the Complaint accrued prior to the bankruptcy filing of Galleria 2425. The bankruptcy court "agreed" with NBK that an adverse finding against NBK requiring it to pay money damages to Appellant created "post-confirmation 'related to' jurisdiction over the lawsuit that could impact them."[14] The bankruptcy court then concludes it has "core" jurisdiction. (ROA 161)

The bankruptcy granted the Rule 12(b)(6) motion, reasserting its view that the matter was a "core proceeding."[15] It is clear that this is the only jurisdictional ground utilized by the bankruptcy court in this context.[16] The bankruptcy court relied in part on the theory that vast portions of Mr. Choudhri's complaint had been "heavily litigated"[17] which seems to have been a response to NBK's request for a 12(b)(6) dismissal on the basis of res judicata – but made without the benefit of any final

---

[13] (ROA 157-161) NBK attempted to insert "related to" jurisdiction into the case, but the bankruptcy court did not consider this, perhaps in light of the law that disallows adding jurisdictional claims after removal.

[14] ROA 161. Of course the standard is not whether a money judgment would impact NBK, but whether the money damages lawsuit will "bear on the interpretation or execution of the debtor's plan" – which it clearly will not. *See In re Craig's Stores*, 266 F3d. 388, 391 (5th Cir. 2001). Appellant has abandoned any claim to ownership of the tax liens when he elected to sue for money damages, so what NBK does with the converted property is not implicated in Appellants lawsuit.

[15] ROA 738-741 at 739.

[16] Had the bankruptcy court implicated "related to" jurisdiction, the matter would have been "non-core." In "non-core" proceedings that are related to a case under title 11, the bankruptcy court "shall submit proposed findings of fact and conclusions of law to the district court" subject to de novo review by that court. 28 U.S.C. § 157(c)(1).

[17] Not only is this conclusion incorrect, but as will be demonstrated, the bankruptcy court in separate orders was careful to maintain Appellant's right to bring this action against NBK.

ruling by any court, state or federal, on the subject matter of the operative complaint.[18] The bankruptcy court indicated that it was relying on a "ruling" made by the state court with which it agreed. (ROA 740). The only possible reference here is a partial record of a hearing in state court in which the trial court indicated what it would do in the future if Galleria 2425 failed to make some payments. (ROA 1594-1601). This "ruling" was by no means final, and the state trial court judge expressly reserved a ruling on breach of the CSA by NBK to a future date.[19]

The bankruptcy court relied heavily on another nonexistent "fact" when it asserted that "the amount of $801,509.42 was not paid" and then placed undue emphasis on this "evidence" in support of its dismissal. This admitted error[20] may have influenced the bankruptcy court to ignore the liquidated damages issue, since this amount ($801,509.42) was the agreed upon liquidated damages amount,[21] and it was in fact paid.[22] This issue was not litigated at all in the disputes between NBK

---

[18] If there were any such final adjudication that's supports dismissal, it should appear somewhere in the record, but it does not.

[19] "I look at the breach of the confidentiality agreement as a totally separate issue that we can take up at another time." ROA 1596.

[20] The bankruptcy court recognized this error in its early pronouncement but apparently forgot this important fact when it arrived at its dismissal analysis. See Doc. 588 (ROA 1685-1687) in which the bankruptcy court states in part: "The Court is in agreement that a factual error occurred in its order that should be corrected. On page 3, the Court stated that '$801,509.42 was not paid within 210 days after the Effective Date as set forth in that agreement.' That statement is incorrect. The parties agree that the payment of $801,509.42 was made." (ROA 1685)

[21] (ROA 1605), liquidated damages provision.

[22] The bankruptcy court recognized this error in its early pronouncement but apparently forgot this important fact when it arrived at its dismissal analysis. See Doc. 588 (ROA 1685-1687) in which the bankruptcy court states in part: "The Court is in agreement that a factual error occurred in its order that should be corrected. On page 3, the Court stated that '$801,509.42 was not paid within

and Galleria 2425, since the claim that NBK converted Appellant's property was never a right that the Galleria 2425 asserted or could have asserted.

The bankruptcy court summarily denied leave to amend.[23]

Appellant duly perfected his appeal to the U.S. District Court,[24] and after briefing and oral argument in that Court, the decision of the bankruptcy court was left undisturbed. Appellant timely perfected this appeal to the U.S. Fifth Circuit Court of Appeals.

When NBK removed this action from the venue and jurisdiction it had agreed to in the settlement agreement, the sole ground urged in favor of jurisdiction was "core" jurisdiction. There is no core jurisdiction over a suit for money between two parties, neither of which is the Debtor in bankruptcy. Whether NBK has to pay for what it stole (according to the Appellant) or not, no third parties of any kind are affected in any legally relevant way. The outcome of that suit does not "bear on the interpretation or execution of the debtor's plan".

The final judgment, order, or decree of the bankruptcy judge was timely appealed to the district court pursuant to 28 U.S.C. § 158(a), FED. R. BANKR. P.

---

210 days after the Effective Date as set forth in that agreement.' That statement is incorrect. The parties agree that the payment of $801,509.42 was made."

[23] (ROA 741)

[24] The District Court dismissed the appeal of the bankruptcy court order, when it did not timely receive the record. Appellant filed a notice of appeal to this Court. Once the District Court was advised that the failure to forward the record was an issue with the bankruptcy court, the appeal was reinstated. After the proceedings noted above the current notice of appeal was timely filed.

8001(a) (district courts from bankruptcy courts).  The order of the district court was timely appealed to this Court pursuant to 28 U.S.C. §§ 158(d), 1291 (circuit courts from district courts). (ROA 1943-1945).

<u>STATEMENT OF THE ISSUES</u>

I.      Whether the Bankruptcy Court had "Core" Jurisdiction?

II.     Whether the Forum Selection Clause Mandates Remand?

III.    Whether the Rule 12(b)(6) Motion was Appropriately Granted?

IV.     Whether the Bankruptcy Court Improperly Denied the Motion for Leave to Amend?

<u>STATEMENT OF THE CASE</u>

In settlement of a state court action, and prior to any final judgment in that case, a contract was entered into involving three parties: Galleria 2425 Owner, LLC (Galleria 2425)[25], National Bank of Kuwait (NBK) and Appellant, Ali Choudhri. Under the contract, Appellant was required to assign to NBK certain tax liens, which under the terms of the contract would be returned to him once Galleria 2425 performed its obligations under the contract.  No provision was included by the parties for the circumstance in which, for whatever reason, Galleria 2425 and NBK did not reach a final conclusion of their deal.  Appellant obtained the option to

---

[25] This entity will later become the Debtor in the underlying bankruptcy.

7

acquire rights under the contract, but never exercised that option. Once Appellant assigned the tax liens to NBK he had fully performed any and all obligations he had under the contract.

The state court action involved disputes arose between NBK and Galleria 2425, with assertions being made that NBK was interfering with the ability of Galleria 2425 to meet its obligations under the loan documents then in place. In that state court action an injunction was entered against NBK after an evidentiary hearing, and at a hearing in which NBK was requesting dissolution of the injunction, the trial court indicated that it would allow foreclosure after a certain time period, based on representations from counsel.

That case ended in a dismissal by agreement,[26] with Galleria 2425 and NBK agreeing that: "Galleria will execute, enter and file in conjunction with NBK a joint motion for dismissal with prejudice of all of its claims against NBK in the Lawsuit and a motion to permanently dissolve the Court's Temporary Injunction Order issued in the Lawsuit."[27] The tax liens issue had yet to arise, since it arose out of the CSA which came into being with an Effective date of August 22, 2022, and the nonsuit of NBK was accomplished on August 31, 2022.[28]

---

[26] Page 4 Doc 508-7. (ROA 1605)
[27] Paragraph 3.1(g) of the CSA, page 4. (ROA 1602-1616)
[28] The bankruptcy court's reliance on a case settled before Appellant's cause of action even accrued is difficult to understand, but whatever was litigated in that case can have no bearing on the case filed by Appellant that is now before this Court.

Under the CSA Galleria 2425 was required to make a request of the trial court to have the $801,509.42, plus interest, transferred to NBK, and in the event Galleria 2425 was unable to perform its obligations under the CSA, NBK would retain that amount as "liquidated damages."[29]  That payment was made to NBK.

Appellant filed suit in state court for recovery of money damages due to NBK's conversion of the tax liens. The Debtor was neither a party to that action, and has never had any interest in its outcome.  The complaint was amended pursuant to the federal rules prior to the appearance of NBK, and it remains abundantly clear that the only relief sought by Appellant is a money damage judgment against NBK for conduct that occurred, and damages sustained, prior to the bankruptcy filing of Galleria 2425.  The presence or absence of a judgment against NBK does not effect the Debtor in any way.

NBK removed the case to the bankruptcy court in contravention of the written agreement between Appellant and NBK that any disputes these parties may have had concerning the contract would be resolved in Harris County state district court.  The sole ground for removal was the alleged existence of "core" jurisdiction, which Appellant asserts does not exist.  NBK now asserts "related to" jurisdiction, even

---

[29] CSA page 4, paragraph 3.1(d).  NBK also retained the right "to pursue all of its rights and remedies under this Agreement, the Loan Documents or otherwise at law or in equity." The CSA provides for remedies including foreclosure and NBK was of course free to pursue them, but the damages for the breach of the CSA itself were resolved by the liquidated damages provision. Indeed, NBK filed its Claim 14 on April 9, 2024 in the amount of $67,153,854.14

9

though that was never stated as a ground for removal, and in the post-confirmation circumstances presented here, is not present either.[30]   Appellant asserted that under controlling Fifth Circuit precedent, a money judgment against NBK in no way pertains "to the implementation or execution of the plan."[31]

NBK then filed its Motion to Dismiss under Rule 12(b)(6) NBK premising its attack on the allegations in the complaint thusly: "The Complaint primarily asserts that Mr. Choudhri is entitled to the Tax Liens because of NBK's alleged breach of the Settlement Agreement."[32]   This is false on its face, as Appellant's suit asserts a right to money damages, and not return of the thing converted.   The bankruptcy court apparently accepted NBK's false characterization of the issue.

In addition, NBK promotes this false reality in its assertion of jurisdiction, stating that "Because the State Court Case involves, among other things, Property of the Debtor's bankruptcy estate, the State Court Case is a core proceeding."[i]   As has been noted, the suit for money damages for conversion of the tax liens has never been property of the Debtor's estate.

A principal complaint made by Appellant in his pleadings involves the lack of any contractual authority for NBK to retain the tax liens when NBK and Galleria

---

[30]Appellant asserts that "related to" jurisdiction is permissive and not compulsory, and as such the forum selection clause agreed to by the parties should still control the venue of disposition.

[31] *In re Craig's Stores of Texas, Inc.,* 266 F.3d 388, 390 (5th Cir.2001) (citations omitted).

[32] Doc. 10, page 9. (ROA 124-134)

2425 were unable to conclude the anticipated transaction between them. In the contract all parties agreed to a liquidated damages provision in the amount of $801,509.42. Under Texas law a valid liquidated damages amount must be an "acceptable measure of damages that parties stipulate in advance will be assessed in the event of a contract breach".[33]

The concept that the tax liens are somehow "liquidated damages" is contrary to established Texas law. In the first instance, liquidated damages must be attached to a contract breach, and here there is no question that Appellant did not breach any provision of the CSA, and thus far even NBK has not cited a provision of the CSA that it claims might have been breached by Appellant. If the claim is that the tax lien assignment was to induce performance, such a provision is void as a penalty.[34] Appellant asserted that NBK could not unilaterally lawfully increase the liquidated damage amount from the agreed upon value of $801,509.42 to a number that exceeds $4,000,000.00, especially when the balance is being "made up" by someone who had no obligations under the contract and breached none. Appellant asserted that NBK agreed at the outset that an "acceptable measure of damages" in the event of a breach is $801,509.42, and reserved other rights as against Galleria 2425, and that

---

[33] *Atrium Med. Ctr., LP v. Houston Red* C LLC, 595 S.W.3d 188, 192 (Tex. 2020). Contrariwise a damages provision that violates the rule of just compensation functions as a penalty and is unenforceable. *Id.*

[34] *Trafalgar House Oil & Gas Inc. v. De Hinojosa* , 773 S.W.2d 797 , 798 (Tex. App.—San Antonio 1989, no writ)

there is no legal basis for NBK to assert a right to keep Appellant's tax liens, when no such right appears in the contract itself.[35]

The bankruptcy court initially notes quite incorrectly that "the agreement was the subject of a previous state court lawsuit"[36] when in point of fact the "agreement" **was in settlement of the state court lawsuit** between NBK and Galleria 2425.[37] The bankruptcy court indicates that the tax lien issue was "heavily litigated" in the bankruptcy,[38] but the only joining of this issue in the bankruptcy court is the removed action that the bankruptcy court dismissed.

The bankruptcy court, continues its confusion when it states incorrectly that "There was a breach of the CSA when the required funds were not tendered as agreed."[39]  This incorrect view of the facts results in the following faulty ruling:

> However, that [state court] ruling[40] was admitted into evidence and this
> Court agreed with the ruling.  Accordingly, this Court finds that NBK did
> not breach the CSA, so any claims related to the CSA fail to state a claim
> for relief and are dismissed with prejudice.  (ROA 740)

---

[35] Appellant also asserted, based on Texas case law, that at a minimum the failure to address the consequences of an uncompleted contract, other than the liquidated damages provision, renders the contract ambiguous. Obviously the bankruptcy court did not address this contention.

[36] ROA 739

[37] See CSA and the definition of "Lawsuit".

[38] ROA 739.

[39] ROA 740.  The bankruptcy court had previously admitted in July that this statement was false (ROA 1685-1687) so it is unclear why it resurfaces here as a justification for dismissal.

[40] Whatever the bankruptcy court is alluding to here, it pertains to conduce that occurred prior to the CSA being entered into.  The CSA settled the state court case.

The bankruptcy court's "finding" that NBK did not breach the CSA by failing to return the tax liens is bereft of any basis whatsoever.  The state court's ruling, that occurred BEFORE the CSA was entered into, no matter how correct, and no matter how much the bankruptcy court agreed with it, cannot form the basis for a dismissal with prejudice of a claim that arose after that ruling.  Continuing on this false premise, the bankruptcy court concludes that the conversion and unjust enrichment claims fail, "for the same reason." (ROA 740).

The bankruptcy court concludes its analysis, by asserting that Appellant is not the owner of the tax liens, an issue that no one disputes. In his lawsuit Appellant is not asserting current ownership of the tax liens:  He is asserting that NBK converted them prior to the bankruptcy, and that as a result NBK owes him money damages. The bankruptcy court disregarded Texas law that allows a plaintiff like Appellant to elect between return of the converted property and damages for the conversion.  The bankruptcy court presumed the election – return of the property – when Appellant has elected to allow NBK to keep that which was converted, and require instead that NBK pay the fair value of the tax liens.[41]

The bankruptcy court went to some pain to assert that it was evaluating the 12(b) motion "confining the court's consideration to the facts stated in the complaint

---

[41] See, e.g, *R.J. Suarez Enters. Inc. v. PNYX L.P.*, 380 S.W.3d 238, 242 (Tex. App.—Dallas 2012, no pet.)(plaintiff may elect damages for the converted property's fair market value at the time and place of conversion or return of the converted property).

and the documents either attached to or incorporated in the complaint,"[42] but clearly it did not comply with the standard that it enunciated.  Indeed in one statement the bankruptcy court announced a ruling that would typically be found **denying** a Motion to Dismiss under Rule 12(b)(6):

> Additionally, and finally the Court recognizes that NBK is a liquid institution and that any possible claims made against it for money damages, by any party, if awarded will be paid. **While the Court doubts the allegations of the movants and does not believe that they will be successful on any of their claims, if they do, to the extent they are entitled to money damages they will be paid.**[43]

In another circumstance the bankruptcy court specifically preserves Appellant's rights to sue NBK.[44]

NBK also asserted its Motion to Dismiss the affirmative defense of res judicata, which the bankruptcy court apparently accepted and ruled on. Appellant asserted that any sort of res judicata basis for granting a Rule 12(b)(6) motion is inappropriate unless this affirmative defense appears on the face of the complaint, and here of course it does not. The bankruptcy court relied in large part on

---

[42] ROA 739

[43] Doc 535, page 4 (emphasis added)(June 17, 2024 order denying motion to prohibit credit bid). The Supreme Court has stated clearly that if the assessment of the trial court is one that just disbelieves the likelihood of success, the complaint is not to be dismissed. (ROA 1617-1620) *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 563, n.8 (2007)( holding "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.")

[44] See text at footnote 81.

proceedings held in a case settled prior to NBK's conversion of Appellant's assets, and concerning which no final findings of fact were made.

Appellant is before this Court addressing the fact that except in the most general of terms, no court has yet ruled on whether a suit for damages between two non-debtors, concerning a cause of action that arose prior to bankruptcy is properly before the bankruptcy court.   Certainly the bankruptcy court dispensed will all aspects of the Appellant's complaint, but at no time did the bankruptcy court address the lawsuit as one for money damages between two non-debtor parties, and the effect of the contractual provisions and the tax liens was likewise never specifically mentioned. The District Court did not disturb the bankruptcy court's findings, but the rationale behind that decision did not address these essential points either.  While it appears that the issue of the potential liability of NBK for its conversion of the tax liens might be resolved against NBK as a matter of law, no court has yet addressed the issue directly.[45]   Likewise, no court has yet addressed the potential ambiguity that might be present under Texas law, if it is not clear as a matter of law that NBK had no right to take and keep the tax liens.

---

[45] Certainly the bankruptcy court and the District Court have implicitly denied relief on this ground, but neither gave any specific reason.

## SUMMARY OF THE ARGUMENT

The bankruptcy court erred in denying Appellant's Motion to Remand because it had no jurisdiction over this suit between Appellant and NBK for money damages, which accrued prior to bankruptcy, the outcome of which can have no effect on the confirmed bankruptcy estate. If this Court were to find that jurisdiction is present, the forum selection clause agreed to by the parties should be enforced, requiring remand. In either case, remand is required.

The bankruptcy court erred in granting NBK's Rule 12(b)(6) motion because the rationale utilized by that court was based on a faulty factual premise, the court improperly applied issue preclusion and affirmative defenses without a proper predicate, and failed to adhere to the standard of review for determining Rule 12(b)(6) motions. When this record is examined utilizing the appropriate standard of review, the Third Amended Complaint states several causes of action upon which relief may be granted.

Appellant requests that this Court reverse the courts below, and remand this case to the state court from which it was removed. Alternatively, Appellant requests that this Court render judgment on liability in his favor, and remand to the lower courts to determine the amount of money damages owed by NBK to Appellant. Alternatively, Appellant requests that this Court enter an order denying the Rule

12(b)(6) motion to dismiss and remand the case for further proceedings in the lower courts.

## **ARGUMENT**

### I.    **Whether the Bankruptcy Court had "Core" Jurisdiction**

The lower courts' subject-matter jurisdiction is reviewed de novo. *In re Galaz*, 841 F.3d 316, 321 (5th Cir. 2016); *In re Deepwater Horizon,* 739 F.3d 790, 798 (5th Cir. 2014).   At issue is a money damages suit by Appellant against NBK for conversion of certain tax liens that occurred prior to the bankruptcy filing of Galleria 2425.  NBK declined to return Appellant's tax liens to him when the sale of property to Galleria 2425 failed to occur, and Appellant's damage claim against NBK accrued at that time.

It is important to note that the operative pleading under consideration is the Third Amended Complaint, filed on July 3, 2024.[46] To the extent that any doubt existed in our jurisprudence concerning this fact, a unanimous Supreme Court resolved the issue unambiguously.  "In removed and original cases alike, the rule that jurisdiction follows the operative pleading ensures that the case, as it will actually be litigated, merits a federal forum." *Royal Canin U.S.A. v. Wullschleger*,

---

[46] Doc 8, adversary. (ROA 87-99)

604 U.S. 22, 46 (2025).  The "operative pleading is the amended complaint. *Id*. at 35.[47]

Appellant elected under Texas law to sue for damages and not for the alternative remedy of return of the converted asset. *R.J. Suarez Enters. Inc. v. PNYX L.P.,* 380 S.W.3d 238, 245 (Tex. App.—Dallas 2012, no pet.).[48]  Damages are assessed at the time of the conversion.[49] *Id.* In a conversion action the Plaintiff must elect his remedy, since he cannot recover market value money damages and possession.[50] Thus, in this case, the question becomes "Whether the bankruptcy court had jurisdiction over a money damages suit between two parties, neither of which was the Debtor, that accrued prior to the filing of the bankruptcy to which the state court case was removed?"

The rules generally applicable are well established.  Removal jurisdiction is to be strictly construed, *Willy v. Coastal Co*rp., 855 F.2d 1160, 1164 (5th Cir. 1988), with any ambiguities being resolved against removal, *Acuna v. Brown & Root, Inc.,*

---

[47] "When a petition is amended," the "cause proceeds on the amended petition." *Washer v. Bullitt County*, 110 U. S. 558, 562, 4 S. Ct. 249, 28 L. Ed. 249 (1884). So changes in parties, or changes in claims, effectively remake the suit."

[48] *R.J. Suarez Enters. Inc. v. PNYX L.P.*, 380 S.W.3d 238, 245 (Tex. App.—Dallas 2012, no pet.)( A plaintiff that establishes conversion is entitled to either: (1) damages for the converted property's fair market value at the time and place of conversion or (2) return of the converted property and damages for its lost use during its detention.

[49] *Id.* See also *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147-48 (Tex. 1997) (per curiam)(damages, measured by the fair market value of the property at the time and place of conversion).

[50] See, e.g., *Horlock v. Horlock*, 614 S.W.2d 478, 484 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.)(Plaintiff must elect and may not change the election of damages after submission).

200 F.3d 335, 339 (5th Cir. 2000). "[T]he removing party bears the burden of establishing that federal jurisdiction exists." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).

NBK removed the case on the sole basis of alleged "core" jurisdiction. This is the sole ground upon which NBK may attempt to establish its claim of bankruptcy jurisdiction.[51] The bankruptcy court should not have considered any non-core jurisdiction assertions. When a bankruptcy court decided a non-core matter it should make findings and recommendations to the District Court, which did not happen here.[52] There is no "core" jurisdiction.[53] NBK cannot, in essence, amend its notice of removal in order to make arguments with respect to any jurisdictional basis other than "core" jurisdiction.[54]

---

[51] For example, the case appears to be removable on the basis of diversity jurisdiction, that ground was not urged, and is now not available to NBK. Appellant notes his insistence that remand was appropriate in any case. If there is no bankruptcy jurisdiction remand is proper. If this Court were to find that federal jurisdiction did exist, then remand is appropriate because the parties' forum selection agreement to litigation their differences in Texas state court is enforceable. *Atlantic Marine Construction Company v. United States District Court for the Western District of Texas,* 571 U.S. 49, 63 (2013).

[52] For "non-core" proceedings that are otherwise related to a case under title 11, the bankruptcy court "shall submit proposed findings of fact and conclusions of law to the district court" subject to de novo review by that court. 28 U.S.C. § 157(c)(1).

[53] The bankruptcy court did not conclude that any non-core jurisdiction was applicable. If it had done so, it would have followed the law and made findings and recommendations to the District Court.

[54] A notice of removal may be amended freely by the defendant within the thirty-day period for seeking removal. *Northern Ill. Gas Co. v. Airco Indus. Gases*, 676 F.2d 270, 273 (7th Cir.1982). After that thirty-day period the notice may not amended to add a completely new basis for removal jurisdiction. *McNerny v. Nebraska Public Power Dist.,* 309 F.Supp.2d 1109 (D. Neb. 2004); *Arco Envtl. Remediation, LLC v. Dep't of Health & Envtl. Quality of Montana*, 213 F.3d 1108, 1117 (9th Cir. 2000) ("The Notice of Removal 'cannot be amended to add a separate basis for removal jurisdiction after the thirty day period.'"); *Wormley v. Southern Pacific Transp. Co.,* 863 F.Supp.

As the sole basis for its assertion of "core" jurisdiction, NBK states:

"Because the State Court Case involves, among other things, Property of the Debtor's bankruptcy estate, the State Court Case is a core proceeding. See 28 U.S.C. § 157(b)(2). Thus, NBK submits that, pursuant to 28 U.S.C. § 157(b), the State Court Case may be heard and determined by the Bankruptcy Court and removal is proper."

As a purely factual matter, the Third Amended Complaint involves no property of the Debtor, and that fact alone should resolve the case against NBK, since the sole basis for the assertion of removal jurisdiction is false. The remedy sought by Appellant is for NBK to write a check to Appellant if Appellant prevails.

This Court has enumerated the parameters of bankruptcy jurisdiction as follows:

Congress vested district courts with jurisdiction over bankruptcy "(1) 'cases under title 11,' (2) 'proceedings arising under title 11,'[55] (3) proceedings 'arising in' a case under title 11,[56] and (4) proceedings 'related to' a case under title 11." *In re U.S. Brass Corp.*, 301 F.3d 296, 303 (5th Cir. 2002) (citing 28 U.S.C. § 1334(a)-(b)). "The first category refers to the bankruptcy petition itself." *Id.* at 304.[57] The latter three further define

---

382 (E.D. Tex. 1994)(same) *citing O'Halloran v. Univ. of Wash.*, 856 F.2d 1375, 1380 (9th Cir. 1988)(same); *Lastih v. Elk Corp.*, 140 F.Supp.2d 166 (D.Conn.2001)(after thirty-day period expired, defendant could not amend notice of removal to add new claim of federal question jurisdiction). *See also*, **14C Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3733** at p. 357-61 (1998) and extensive listing of authorities cited therein.

[55] Arising under jurisdiction is not implicated here. *See In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987) (noting that a proceeding does not "arise under" Title 11 if it does not invoke a substantive right created by federal bankruptcy law).

[56] "Arising in" jurisdiction is based on claims that have no existence outside bankruptcy. *In re Wood*, 825 F.2d at 97; *see also In re Repository Tech., Inc.*, 601 F.3d 710, 719 (7th Cir. 2010)( "arising in" relates to those cases which could not exist outside of the bankruptcy proceeding). Obviously the money damages suit by Appellant against NBK "exists" outside of the bankruptcy proceeding. This basis does not apply.

[57] This basis is not even arguably present here.

the scope of bankruptcy jurisdiction, with "related to" jurisdiction being the broadest category. *Id.* "Related to" jurisdiction exists where "the outcome of the proceeding could conceivably have an effect on the debtor's estate." *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390 (5th Cir. 2001).[58] The district courts routinely delegate authority to bankruptcy judges over bankruptcy cases and "core" proceedings "arising under" and "arising in" Title 11. 28 U.S.C. § 157(a)-(b).

*Trowbridge v. Chesapeake Energy Corp. (In re Chesapeake Energy Corp.),* 70 F.4th 273, 285 (5th Cir. 2023).

In this case, there is a confirmation plan, and this Court has enunciated the sole jurisdictional ground available to the bankruptcy court as follows: "Following the confirmation of a Chapter 11 reorganization plan, bankruptcy jurisdiction is limited to matters 'pertaining to the implementation or execution of the plan.' *Craig's Stores*, 266 F.3d at 390."[59] Once again, whether NBK has to respond in money damages to Appellant's Complaint in no way "pertains to the implementation or execution of the plan."[60]

---

[58] As the bankruptcy court noted more than once, NBK is a liquid institution and can pay any damages awarded against it. In such an event, the estate of the Debtor is simply unconcerned. In any event, "related to" jurisdiction is non-core. As this Court has stated "If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding." *In re Wood*, 825 F.2d at 97.

[59] *Trowbridge v. Chesapeake Energy Corp. (In re Chesapeake Energy Corp.)*, 70 F.4th 273, 285 (5th Cir. 2023).

[60] Even cases that have an effect on the assets of the estate, which this one does not, do not necessarily confer bankruptcy jurisdiction. "[T]he mere potential of a claim to increase or decrease the pool of funds available to a debtor, without more, is insufficient to create bankruptcy jurisdiction." *In re Transamerican*, 127 B.R. 800, 803 (S.D. Tex. 1991) *citing In re Craig's Stores of Texas, Inc* ., 247 B.R. 652 , 654 (S.D. Texas 2000).

Appellant under various theories asserts that NBK converted an asset owned by Appellant, and that NBK therefore owes Appellant the value of what was converted. The money damages sought involve only Appellant and NBK. There is not even an assertion made that the converted property was property of the Debtor at the time of conversion, or that the Debtor has, or has ever had any interest of any kind whether Appellant prevails on his money damages suit.

This fact is implicitly acknowledged by the bankruptcy court as well, on July 8, 2024.[61] (ROA 1688-1717) Paragraph 30 of the Order Approving Asset Purchase Agreement expressly states:

> Payments to creditors as a Directed Payoff Amount shall not (x) limit the rights of any creditor to receive the full amount due under applicable law or (y) preclude any party from pursuing claims against a creditor receiving a Directed Payoff Amount, **including any claims of Ali Choudhri against the National Bank of Kuwait.**[62]

NBK's basis premise appears to be that "core" jurisdiction is dependent upon what NBK does with the Tax Liens after it has converted them. But this is of no moment to the Appellant, since the *damages* for conversion are set at the time the conversion occurs. "The proper measure of damages for conversion is generally ***the fair market value of the converted material <u>on the date that it was converted</u>***, plus

---

[61] This case had been on filed with the bankruptcy court for a month, when the bankruptcy court specifically made allowance for Appellant's case against NBK.

[62] Main Case Doc. 608, page 25. (ROA 1712) (emphasis added). Other examples are cited in the portion of this brief as it relates to alleged issue preclusion.

any other losses suffered as a natural and proximate cause of the conversion."[63]  Had Appellant acted more quickly, the state court might have resolved the case by now, but whether it is resolved in Appellant's or NBK's favor, it would have no legal effect on anyone other than Appellant or NBK. NBK has to write a check or it doesn't.[64]

As the Supreme Court indicated in the seminal case on this point *Stern v. Marshall*, 564 U. S. 462, 499 (2011):  "Vickie's [here "Plaintiff's] claim, in contrast, is in no way derived from or dependent upon bankruptcy law; it is a state tort action that exists without regard to any bankruptcy proceeding."   Nothing about Appellant's suit for damages against NBK is "dependent on bankruptcy law." There is no "core" jurisdiction.

## II.    Whether the Forum Selection Clause Mandates Remand

NBK makes no effort to dispute the fact that the forum-selection clause between the parties is enforceable; it merely pretends that no such clause exists.   It is undisputed that the forum-selection clause agreed to by the parties mandates that this dispute be determined in the Texas State District Court in Harris County, Texas. This should be dispositive of any issue regarding Appellant's request for remand to

---

[63] *50-Off Stores, Inc. v. Banques Paribas (Suisse), S.A.*, 180 F.3d 247 (5th Cir. 1999)(citing Texas law)(emphasis added.)

[64] The bankruptcy court acknowledged this in the credit bid procedure. "NBK is a liquid institution and that any possible claims against it for money damages, by any party, if awarded will be paid." (Doc. 535, page 4.)(ROA 1617-1620)

the venue agreed upon by the parties. If the Motion to Remand is granted, the forum-selection clause will be honored. If the Motion to Remand is denied, the forum-selection clause should be honored, and the case sent back to the state court.

This Court has stated in no uncertain terms that "We apply a 'strong presumption' in favor of enforcing mandatory forum-selection clauses." *Noble House, L.L.C. v. Certain Underwriters*, 67 F.4th 243, 248 (5th Cir. 2023) *citing Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016). The Court in *Noble* went on to elucidate the strong policy in favor of enforcing such clauses stating:

> So, "absent some compelling and countervailing reason," the arms-length agreement choosing that forum-selection clause "should be honored by the parties and enforced by the courts." *Bremen*, 407 U.S. at 12, 92 S. Ct. 1907; *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33, 108 S. Ct. 2239, 101 L.Ed.2d 22 (1988) (Kennedy, J., concurring) ("[E]nforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.").

Here there is no "compelling and countervailing reason" not to enforce the agreement of the parties. The forum-selection clause "should be honored by the parties and enforced by the courts." If this Court determines that the bankruptcy court has jurisdiction, it should nevertheless immediately honor the forum-selection clause and order the courts below to send the parties back to the court where they contractually agreed to settle their differences.

24

NBK makes no argument that the law should be applied otherwise. It merely pretends that no forum-selection clause exists and hopes that this Court will do likewise. It is axiomatic that the initial determination should always be the appropriate forum for resolution of a dispute.[65] If the Motion to Remand is granted for lack of bankruptcy jurisdiction, the appropriate forum is the state District Court of Harris County. If the Motion to Remand is denied on jurisdictional grounds, then this Court should nevertheless enforce the forum-selection clause which dictates that the forum is the state District Court of Harris County. The existence of a forum selection clause always presumes the possibility that different courts may have jurisdiction, and here there is no compelling reason to depart from the general rule that the clause "should be honored by the parties and enforced by the courts." *Bremen*, 407 U.S. at 12.

## III.    Whether the Rule 12(b)(6) Motion was Appropriately Granted

### A. Standard of Review

When evaluating a pleading challenged by a Rule 12(b)(6) motion the court is required to "accept all well-pleaded facts as true, drawing all reasonable inferences in the nonmoving party's favor." *Mayfield v. Currie,* 976 F.3d 482, 485 (5th Cir. 2020) (citation omitted). Courts consider "the facts alleged in the pleadings,

---

[65] *E.g., Steel Co. v. Citizens for a Better Env't* , 523 U.S. 83, 94, 118 S. Ct. 1003, 140 L.Ed.2d 210 (1998).

documents attached as exhibits or incorporated by reference[66] in the pleadings and matters of which the judge may take judicial notice." [67] *Allen v. Hays,* 65 F.4th 736 (5th Cir. 2023) citing 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[2], at 12-94 (3d ed. 2022). Documents central to the issues in the complaint and referenced by the complaint are also to be considered.[68] *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010).[69]

A dismissal under Rule 12(b)(6) can be based on an affirmative defense only if the defense appears on the face of the complaint. *Basic Cap. Mgmt. v. Dynex Cap., Inc.*, 976 F.3d 585, 588 (5th Cir. 2020). In such a case the pleadings in the complaint must reveal "beyond doubt" that no set of facts can be proven to overcome the defense or otherwise entitle the Plaintiff to relief. *Garrett v. Commonwealth Mortg. Corp.*, 938 F.2d 591, 594 (5th Cir. 1991).

### B. Bankruptcy Court Misapplies the Standard of Review

---

[66] The factual allegations in the state court proceeding were incorporated by reference in the challenged pleadings, and the plaintiff made the appropriate request that this Court take judicial notice of those state court pleadings. See, e.g., footnote 6, at paragraph 35 in Appellants Response to Motion to Dismiss. (ROA 162-171)

[67] Plaintiff requests that the Court take judicial notice of the Order granting a Temporary Injunction against NBK in state court, and the transcript of proceedings that led to the issuance of the order. Copies are attached to this Response. Temporary Injunction (ROA 175-179)

[68] In this case that would include at least the CSA between the parties, and the proceedings in the 281st State District Court. E.g., (ROA 1602-1616, ROA 1594-1601) (ROA 175-179)

[69] The bankruptcy court cites the standard of review (ROA 739) but does not adhere to it.

The bankruptcy court claims in its Order[70] that there was a state court "ruling" addressing the claim that NBK breached the CSA in some respect.[71] The exhibit is an exchange between the state court judge, Mr. Conrad (for NBK) and Mr. Wetwiska (for Galleria 2425)[72] concerning what might happen in the future.[73] When addressing the claim that NBK breached the CSA the trial court says "I look at the breach of confidentiality agreement as a totally separate issue that we can take up at a later date." (ROA 1596). The bankruptcy court notes that Appellant objected to the use of this "ruling", which neither involved Appellant or a final judgment.[74] (ROA 740). The bankruptcy court "agreed with the ruling" (ROA 740)[75] which is not actually an evidentiary event,[76] and in any case does not involve Appellant at all.[77]

---

[70] ROA 738-740.

[71] The citation is to ECF 498-1 (ROA 740, fn. 8)

[72] ROA 1594.

[73] ROA 1595.

[74] Res judicata bars an action when four elements are met:(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions. *Houston Pro. Towing Ass'n v. City of Houston*, 812 F.3d 443, 447 (5th Cir. 2016) (quotation omitted).

[75] The suggestion, if made, that the bankruptcy court made a legitimate judicial determination regarding the tax lien issue as it relates to the conduct of NBK has no support on this record.

[76] Even if the state trial court had issued an order instead of talking to the lawyers, it is unclear whether that would have been an appropriate use of judicial notice. Rule 201 does not permit courts to take judicial notice of legal determinations. *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 831 (5th Cir. 1998).

[77] Certainly Appellant may be the beneficiary of misconduct by NBK, and assertions that breach of the confidentiality agreement which were clearly not determined by the state court or the bankruptcy court remain viable for Appellant.

Here it should be apparent that the "ruling" was not a final adjudication of the merits whether NBK had breached the CSA.[78]  The state trial court expressly notes that this is for future determination, which never occurred.  None of the causes of action made by Galleria 2425 in its active petition were addressed at all by the state court judge.  What we do know is that Appellant's claims had not yet arisen, since the ultimate outcome of the deal between NBK and Galleria 2425 was as yet unknown.[79]

Contrarily, the bankruptcy court on at least two occasions preserved the right of Appellant to sue NBK.  NBK claimed that the Credit Bid Order was evidence of res judicata, but the bankruptcy court expressly denied a determination on the merits of these claims, recognizing that "NBK is a liquid institution and that any possible claims against it for money damages, by any party, if awarded will be paid."[80]  NBK claimed Proof of Claim 21 as support for its claim preclusion defense, but again the bankruptcy court expressly noted that the order entered was without prejudice to "the rights of Ali Choudhri to pursue any causes of action he may have against the National Bank of Kuwait, S.A.K.P, New York Branch."[81]

---

[78] If there was any final adjudication anywhere, it should be part of this record.

[79] Reading tea leaves from the excerpt relied on by the bankruptcy judge, it looks like Galleria 2425 is asking for time to bring other investors to the deal.  Whatever the true import of that excerpt, it is hardly sufficient to satisfy any known evidentiary standard.

[80] Doc. 535, page 4. (ROA 1619)

[81] Doc. 640 (ROA 1718) This is obviously at odds with the idea that bankruptcy court had already determined that Appellant had no conceivable action against NBK.

In addition, the bankruptcy court incorrectly states that "There was a breach of the CSA when required funds were not tendered as agreed." (ROA 740)[82] Nevertheless, the bankruptcy court notes that it agreed with the state trial court "ruling" which in no way addressed the tax lien issue, and which on its face left open the question of whether NBK had indeed breached the CSA. Based on this flawed foundation, the bankruptcy court declares globally: "Accordingly,[83] this Court finds that NBK did not breach the CSA, so any claims related to the breach of the CSA fail to state a claim for relief and are dismissed with prejudice." (ROA 740).

This global dismissal violates basic principles of due process. No court, state or federal has addressed the tax lien issue, outside of this summary treatment by the bankruptcy court. The bankruptcy court dismisses any consideration of liquidated damage law, or the express terms of the contract, and states that NBK retained the tax liens because NBK was not paid by Galleria 2425, implicitly agreeing that this is a liquidated damage provision or one designed to compel performance, either of which is unenforceable under Texas law.[84]

---

[82] This is acknowledged to be an "incorrect statement" by the bankruptcy court. (Doc. 588, page 1) (ROA 1685)

[83] The nonexistent failure to pay $801,509.42 and the state court's prediction of what it may do if certain payments are not made.

[84] *FPL Energy, LLC v. TXU Portfolio Mgmt. Co., L.P.*, 426 S.W.3d 59, 69 (Tex. 2014).(penalty); *Trafalgar House Oil & Gas Inc. v. De Hinojosa* , 773 S.W.2d 797 , 798 (Tex. App.—San Antonio 1989, no writ)(induce performance).

A dismissal under Rule 12(b)(6) can be based on an affirmative defense only if the defense appears on the face of the complaint. *Basic Cap. Mgmt. v. Dynex Cap., Inc.*, 976 F.3d 585, 588 (5th Cir. 2020).  In such a case the pleadings in the complaint must reveal "beyond doubt" that no set of facts can be proven to overcome the defense or otherwise entitle the Plaintiff to relief. *Garrett v. Commonwealth Mortg. Corp.*, 938 F.2d 591, 594 (5th Cir. 1991).  Here, even if one ignores the "face of the complaint" rule, neither the state court nor the bankruptcy court considered the full array of possible breaches by NBK.  Similarly ignored are the causes of action grounded squarely in Texas state law.

The bankruptcy court addresses the unjust enrichment claim based on the pleadings and finds those pleadings lacking. (ROA 740)[85]  The final two sentences of the Order are irrelevant, since they dismiss possible claims of current ownership of the tax liens, something the Appellant is not claiming.  Perhaps most notable in the prior rulings of the bankruptcy court is the statement that though the court felt Appellant's claims were weak, NBK could pay them if Appellant succeeded.  The bankruptcy court says:

> Additionally and finally the Court recognizes that NBK is a liquid institution and that any possible claims made against it for money damages, by any party, if awarded will be paid.  **While the Court doubts the allegations of the movants and does not believe that they will be**

---

[85] Texas law is contrary to the bankruptcy court's limited statement of it.

**successful on any of their claims, if they do, to the extent they are entitled to money damages they will be paid.**[86]

The Supreme Court has stated clearly that if the assessment of the trial court is one that just disbelieves the likelihood of success, the complaint is not to be dismissed. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 563, n.8 (2007)(holding "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.") The Order of Dismissal is faulty on its face and should be reversed.

### C. Under the Standard of Review, Appropriately Applied, the Complaint States Claims for Relief.

**Incorporated by reference -** in addition to the actual Complaint on file the allegations made in state court concerning the conduct of NBK were incorporated by reference.  In this case this includes, by reference, the allegations that NBK interfered with transactions to which Galleria was a party and by wrongfully posting the property for foreclosure.[87] NBK also allegedly breached the confidentiality provisions of the CSA,[88] ignored a court order regarding the timing of foreclosure, and chilled the ability of Galleria to effectuate a sale in order to comply with the

---

[86] Doc 535, page 4 (ROA 1619) (emphasis added)(June 17, 2024 order denying motion to prohibit credit bid). The Supreme Court has stated clearly that if the assessment of the trial court is one that just disbelieves the likelihood of success, the complaint is not to be dismissed.  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 563, n.8 (2007)( ( holding "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.")

[87] See generally Exh.4 to Document 24. Pp. 10-24. (ROA 685-699)

[88] As noted, this issue was reserved by the state court in its discussion with counsel.

31

payment provisions of the CSA.[89]  According to the state court petition incorporated by reference, NBK also interfered with potential business relations with Globix Investment, Ironwood Commercial Realty, Shah Firm, LLC and Jeb Brown Law,[90] and tortuously interfered with contracts with SIBS International and Caldwell Soames.[91]  The petition also complains of fraud by NBK.[92]  The factual allegations incorporated by reference and those that appear in the pleadings establish several plausible causes of action.  Even though the wrongful actions are allegedly taken against Galleria 2425, they also support Appellant's claim that NBK wrongfully converted the tax liens and breached its implied obligations to Appellant.[93]  In addition, these wrongful actions are pertinent to the equitable claims made in the petition.

**Conversion**[94] -   The elements of conversion under Texas law are: "(1) [the plaintiff] legally possessed the property or was entitled to it; (2) the defendant wrongfully exercised dominion and control over the property, excluding the plaintiff; (3) the plaintiff demanded the property's return; and (4) the defendant refused."

---

[89] Exh. 4 to Document 24 at 10. (ROA 685)

[90] Exh. 4 to Document 24 at 21. (ROA 696)

[91] Exh. 4 to Document 24 at 20. (ROA 695)

[92] Exh. 4 to Document 24 at 22-24. (ROA 697-699)

[93] NBK's theory is that the CSA states that the tax liens will be returned "only if" the CSA is performed by Galleria 2425, which as a matter of objective fact is not what the contract says.  But under that theory, anything that NBK does to harm or inhibit the ability of Galleria 2425 to perform inures to the detriment of Appellant.  And of course his causes of action did not accrue until the deal went south and NBK refused to return or pay for his liens.

[94] E.g., ROA 92 at paragraph 50 and 51.

*Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir.2009). Here Appellant has pleaded that he was legally entitled to the tax liens, that NBK wrongfully exercised dominion or control over it, that NBK refused to return the tax liens, and that he had been monetarily damaged as a result.[95]

There should be little doubt that this states a plausible cause of action for conversion. Again, the contract is silent on the controlling issue, which is what happens to the tax liens if the transaction is never consummated for whatever reason. They are not part of the purchase price, nor identified as part of any payment, nor are they listed in the liquidated damages provision. If they were construed to be a liquidated damages provision, that provision would be unenforceable under Texas law. In addition, the tort of conversion would be established on these pleadings under NBK's theory of the case, if in fact a jury were to find that NBK's actions were in sufficient derogation of the performance of Galleria 2425.

**Unenforceable Penalty**[96] --  Appellant had no obligation under the contract, and therefore could not be subject to any penalty for "breach" of the contract. The tax liens are not part of the consideration for the deal, since the amount to be paid by Galleria is unchanged by the ownership of the liens. The tax liens are not "liquidated damages" because there is a liquidated damages clause in the contract

---

[95] ROA 92-93.

[96] The factual predicate for this cause of action is replete in Appellant's pleadings. See e.g., ROA 90, paragraphs 23-30.

that does not mention the tax liens.  If the tax liens are liquidated damages, then the pleadings assert they are an unenforceable penalty, yet another vehicle by which the value of the tax liens must be paid to the Appellant.

Texas courts allow a liquidated damages provision but only under certain circumstances, which are not present here.  "The basic principle underlying contract damages is compensation for losses sustained and no more; thus, we will not enforce punitive contractual damages provisions." *FPL Energy, LLC v. TXU Portfolio Mgmt. Co., L.P.*, 426 S.W.3d 59, 69 (Tex. 2014). A liquidated damages contract provision that establishes an "acceptable measure of damages that parties stipulate in advance will be assessed in the event of a contract breach" is enforceable, but a damages provision that violates the rule of just compensation functions as a penalty and is unenforceable. *Atrium Med. Ctr., LP v. Houston Red C LLC*, 595 S.W.3d 188, 192 (Tex. 2020). "Provisions that apply the same measure of damages regardless of the magnitude of the breach are facially unreasonable and constitute an impermissible penalty as a matter of law," and "[e]ven in cases where the alleged breach is material, a 'one size fits all' liquidated damages provision will not be enforced." *Shops at Legacy (RPAI) L.P. v. Del Frisco's Grille of Tex., LLC*, No. 05-19-01274-CV, 2020 WL 4745548, at *5 (Tex. App.-Dallas Aug. 17, 2020, pet. denied) (mem. op.).

The CSA has a liquidated damage penalty and the tax liens are not in it.  The dollar amount of the liquidated damage amount was paid to NBK.  It is not possible

under Texas law to have a written liquidated damages penalty and some sort of implied or unwritten one.  The CSA clearly states that:

> THIS AGREEMENT CONSTITUTES THE ENTIRE AGEREMENT BETWEEN THE PARTIES HERETO WITH RESPECT TO THE SUBJECT MATTER AND THERE ARE NO OTHER AGREEMENTS, WRITTEN OR ORAL, EXPRESS OR IMPLIED, RELATED TO THE MATTERS SET FORTH HEREIN.

No one contests the enforceability of the liquidated damages provision actually written in the CSA.  It was thus agreed by all parties to be an "acceptable measure of damages that parties stipulate in advance will be assessed in the event of a contract breach".  That number was less than a million dollars, and the pleaded for value of the tax liens is $3,000,000, which is many times that.  If the tax liens are "liquidated damages" that implied "provision" is an unenforceable penalty.

"To enforce a liquidated damages clause, the court must find that (1) the harm caused by the breach is incapable or difficult of estimation and (2) the amount of liquidated damages called for is a reasonable forecast of just compensation." *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991).  Here there is no "breach" by Appellant, despite statements to the contrary by NBK to the courts below.  The liquidated damages provision appears on its face to run afoul of Texas law, since it is not connected with any breach by Appellant.  Usually the question whether a contractual provision is an unenforceable penalty is a question of law for the court

to decide, but at times factual issues must be resolved before the legal question can be decided. *Id.*

**Breach of Contract**[97] - This cause of action implicates Appellant who was a party to the contract, but had no obligations under it unless he chose to. Nevertheless, actions taken by NBK that allegedly led to the lack of performance by Galleria, a pertinent to the Appellant's claims. Under NBK's interpretation of the contract Galleria's failure to perform allows it to keep the tax liens even though that result never appears on the CSA itself.

Properly construed, says Appellant, since there is nothing in the contract that provides a legal basis for NBK to retain the tax liens, the mere retention of them by NBK operates as a breach of contract. In addition, the assertions of the bad conduct of NBK by Galleria operates as a breach of contract that provides the "basis" for NBK to take Appellant's property. A full extension of NBK's "construction" of the contract would allow NBK to actively prevent Galleria from closing, and pocket the 4 million dollars, with their property interest unaffected. Under any view, if that were the plan all along, that would constitute not only breach of contract, but also fraud.

**Ambiguity** – Out of an abundance of caution, Appellant has plead in the alternative that under Texas law the failure of the contract to address the fate of the

---

[97] E.g., (ROA 94), paragraph 53.

tax liens renders the contract ambiguous.  Appellant asserts his right to an affirmative recovery based on the plain language of the contract and existing Texas law, but some Texas law provides support for a finding of ambiguity when the fate of contractual funds is not clearly established in writing.

In *Phonetec*,[98] a case with surprising similarity to the one at issue here, the Court of Appeals considered a contract in which $250,000 was paid in advance, and that amount was to be repaid to the customer by using an agreed upon reduction formula.[99]  The contract contained an early termination clause, which was exercised, and the customer asked for its money back.  Phonetec argued that the only way the customer could recoup its money was by performing the contract, but the Court disagreed:

> We agree with Phonetec that, so long as the contract remained in force, the deposit could only be recouped through reduced charges, but we cannot agree that this forecloses any other treatment of the deposit following an agreed early termination.

---

[98] *StarCom Commc'ns, LLC v. Phonetec, LP,* No. 11-07-00305-CV, 2009 WL 1653059, at *1 (Tex. App.-Eastland June 11, 2009, no pet.) (mem. op.),

[99] Prior to the start of any custom programming for Purchaser, Purchaser agrees to pay Phonetec a $100,000 deposit plus the cost of the custom programming. At such time as the programming is finished and performing to Purchaser's satisfaction and prior to any new End User activations, Purchaser agrees to pay Phonetec an additional $150,000 deposit. The total deposit amount shall equal $250,000 and shall be recouped at a rate of $3.00 per active prorated subscriber per month. The method to be used for Purchaser's recoupment of the $250,000 deposit shall be for Phonetec to reduce the unlimited nights and weekends MRC [monthly recurring charge] by $3.00 per End User per month for the first 83,333 active, prorated End User months. This shall be equivalent to a $3.00 per month per prorated active End User credit off the unlimited nights and weekends MRC until such time as the $250,000 deposit amount has been recouped
*Starcom Comms. v. Phonetec,* No. 11-07-00305-CV, (Tex. App. Jun. 11, 2009).

The contract simply fails to address the deposit following an agreed early termination. This absence makes the agreement ambiguous because it is impossible to determine the parties' intentions from the four corners of the agreement. [100]

The case was remanded for evidentiary treatment of the dispute. [101] If the Appellant does not prevail on his other plausible causes of action then the pleadings before this Court assert ambiguity in the alternative, which also states a claim upon which relief could be granted.

**Equity** - The complaint alleges in the alternative a series of causes of action that lie in equity. For example, rescission is a remedy that lies if a contract, even a valid one, must be set aside due to fraud, mistake, or other reasons to avoid unjust enrichment. *Martin v. Cadle Co.*, 133 S.W.3d 897, 903 (Tex.App,--Dallas, pet. denied). It has been said that this cause of action is not premised on wrongdoing, but instead applies where equity and good conscience require restitution. *Nivens v. City of League City*, 245 S.w.3d 470, 474, n.2 (Tex.App.—Houston [1st Dist.] 2007, pet. denied). So, even conduct short of a material breach may be enough to support this pleaded cause of action. Indeed the Fifth Circuit has noted that Texas gives equity

---

[100] Interestingly, both parties claimed in the trial court and in the court of appeals that the agreement was unambiguous. *See Sage St. Assocs. v. Northdale Constr. Co.,* 863 S.W.2d 438, 445 (Tex. 1993) (explaining that court may conclude that contract is ambiguous even in absence of pleading by either party); see also "[W]hen a contract is ambiguous, the trier of fact must resolve the factual issue of intent ....' *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007)."

[101] More recently and in a similar vein, the Court in *Prince Wateba,* 02-23-00085-CV (Tex.App. Oct. 05, 2023.) dealt with a Rescission Agreement that did not mention a previously paid amount of $431,675 and returned the case to the trial court for evidentiary clarification of the parties' intent.

a wide berth. "These [Texas] authorities leave open the possibility that litigants may elect to premise their unjust enrichment claims on conduct that, while not illegal, is nevertheless wrongful, unethical, or otherwise unjust. *Digit. Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d 365, 382-83 (5th Cir. 2020) (cleaned up).[102] Without question Appellant has alleged that the conversion of the tax liens is wrongful and unjust. This, too states a claim for relief.

Here, for example, if the evidence showed that there was no meeting of the minds with respect to the treatment of the tax lien issue, rescission may be the appropriate remedy.[103] The contract contains no language that determines the treatment of the tax liens in the event of a failure to close for any reason, including impossibility.[104] The court cannot supply a missing term based on what it "thinks" the parties may have agreed to.[105] Here they do not agree, and the evidence weighs heavily against NBK's interpretation of the non-language. If the value of the tax liens was to be compensation to NBK under all circumstances, it would have been

---

[102] The bankruptcy court gave equity short shrift claiming that Appellant did not allege "fraud, duress, or the taking of undue influence." ROA 740. This is a too myopic view of Texas law.

[103] A meeting of the minds is a mutual understanding and assent to the expression of the parties' agreement. *Domingo v. Mitchell*, 257 S.W.3d 34, 40 (Tex. App.—Amarillo 2008, pet. denied). Whether the parties reached an agreement is a question of fact. *Parker Drilling Co.,* 316 S.W.3d at 72. Without a meeting of the minds, there is no enforceable contract. *MTIS Ltd. v. Corporation*, 64 S.W.3d 62, 68 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

[104] When a material or essential term is missing or not certain when the contract was allegedly formed, the contract will fail for indefiniteness. *See Marx v. FDP, LP*, 474 S.W.3d 368, 376 (Tex. App.—San Antonio 2015, pet. denied).

[105] *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003))courts "may neither rewrite the parties' contract nor add to its language.

designated as part of the Purchase Price, or part of the down payment, or even as part of the designated liquidated damages. The contract could have said a return would be made "only if" certain conditions were met, but id did not. All of this is some evidence coupled with the lack of any contractual language, that states a plausible cause of action in equity.

### IV.    Whether the Bankruptcy Court Improperly Denied Motion for Leave to Amend

The Fifth Circuit has said: "FRCP 15(a) governs leave to amend, stating "[t]he court should freely give leave when justice so requires." **FED. R. CIV. P. 15(a)(2)**. We review denials of leave to amend for abuse of discretion, but the term "discretion" is a bit misleading: it tends to be an abuse of discretion to flatly deny litigants the ability to amend their complaint, without exercising such discretion. *See Stripling v. Jordan Prod. Co*, 234 F.3d 863, 872 (5th Cir. 2000) ("In the context of motions to amend pleadings, 'discretion' may be misleading, because [Rule 15(a)] evinces a bias in favor of granting leave to amend."); *see also, e.g., Stem v. Gomez,* 813 F.3d 205, 215 (5th Cir. 2016) ("A court must have a substantial reason to deny a party's request for leave to amend."); *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006) ("[T]here is a strong presumption in favor of granting leave to amend[.]"); *Mayeaux v. La. Health Serv. & Indem. Co.,* 376 F.3d 420, 425 (5th Cir. 2004) ("[D]istrict courts must entertain a presumption in favor of

granting parties leave to amend."(emphasis added)).[106]

Given the limitations of the bankruptcy court's analysis, and its clear misunderstanding of the factual predicate of Appellant's claims, allowing leave to amend would enable Appellant to more fully elucidate his claims. No legitimate reasons exist under Fifth Circuit precedent to deny leave to amend in this case.

## **CONCLUSION**

The bankruptcy court erred in denying Appellant's Motion to Remand because it had no jurisdiction over this suit between Appellant and NBK for money damages, which accrued prior to bankruptcy, the outcome of which can have no effect on the confirmed bankruptcy estate. If this Court were to find that jurisdiction is present, the forum selection clause agreed to by the parties should be enforced, requiring remand. In either case, remand is required.

The bankruptcy court erred in granting NBK's Rule 12(b)(6) motion because the rationale utilized by that court was based on faulty factual premises, and the court improperly applied issue preclusion and affirmative defenses without a proper predicate, and failed to adhere to the standard of review for determining Rule 12(b)(6) motions. When this record is examined utilizing the appropriate standard

---

[106] *Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383 (5th Cir. 2024)

of review, the Third Amended Complaint states several causes of action upon which relief may be granted.

Appellant requests that this Court reverse the courts below and remand this case to the state court from which it was removed. Alternatively, Appellant requests that this Court render judgment on liability in his favor, and remand to the lower courts to determine the amount of money damages owed by NBK to Appellant. Alternatively, Appellant requests that this Court enter an order denying the Rule 12(b)(6) motion to dismiss and remand the case for further proceedings in the lower courts, which if appropriate includes leave to amend the current complaint.

## **PRAYER**

Appellant respectfully requests that this Court reverse the courts below and grant the following relief:

Order the bankruptcy court to remand this case to the 129th Judicial District Court of Harris County, Texas, on the basis of the lack of "core jurisdiction" or on the basis of the forum selection clause agreed to by the parties;

Alternatively, consider the case on its merits and render judgment that the retention of the tax liens by NBK operated as either an unenforceable penalty under Texas law, or that there was no meeting of the minds on the formation of the CSA, in either case remanding for a determination of the amount of damages owed to Appellant by NBK;

Alternatively, remand to the bankruptcy court for further proceedings, having reversed the order granting the Motion to Dismiss, including if appropriate and order allowing Appellant to amend his pleadings; and

For such other and further relief to which Appellant may show himself justly entitled.

Respectfully Submitted this 17th day of June, 2025

<div style="margin-left:40%">

**THE STEIDLEY LAW FIRM**

*/ s /  Jeffrey W. Steidley*
Jeffrey W. Steidley
THE STEIDLEY LAW FIRM
3701 Kirby Drive, Suite 1170
Houston, Texas 77098
(713) 523-9595
(713) 523-9578 – Fax
jeff@texlaw.us

**ATTORNEY FOR APPELLANT**

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing instrument was served upon all counsel of record via the court's ECF system on this 17TH day of June, 2025.

**PILLSBURY WINTHROP SHAW PITTMAN LLP**     *Via ECF Filing*
Charles C. Conrad
Ryan Steinbrunner
609 Main Street, Suite 2000
Houston, TX 77002
Telephone: 713-276-7600
Facsimile: 713-276-7634
charles.conrad@pillsburylaw.com
ryan.steinbrunner@pillsburylaw.com
*--and--*
Andrew M. Troop*
Patrick E. Fitzmaurice**
Kwame O. Akuffo**
31 West 52nd Street
New York, NY 10019-6131
Telephone: 212-858-1000
Facsimile: 212-858-1500
patrick.fitzmaurice@pillsburylaw.com
kwame.akuffo@pillsburylaw.com
*Lead Counsel
**Admitted *Pro Hac Vice*

***Counsel for National Bank of Kuwait, S.A.K.P., New York Branch***


                                             */ s /  Jeffrey W. Steidley*
                                               Jeffrey W. Steidley

44

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1; this document contains 12,234 words.

This document also complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word Version 11 utilizing 14 font with 12 font for footnotes.

*/s/ Jeffrey W. Steidley*
Jeffrey W. Steidley